IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| VICTOR KEITH WILSON, TDCJ #00796590, | § § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. 3:14-CV-244 |
| J.W. MOSSBARGER, *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Victor Keith Wilson (TDCJ #00796590), an inmate in the custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 and is proceeding *in forma pauperis* (Dkt. 1, Dkt. 5, and Dkt. 11). He asserts that the defendants violated his right to procedural due process during the course of a prison disciplinary proceeding that resulted in, among other sanctions, his being confined in administrative segregation (Dkt. 1 at p. 6; Dkt. 13 at pp. 1–2). In his supplemental briefing, Wilson also alleges that the disciplinary proceeding about which he complains was a retaliatory measure by one of the defendants and that he contracted a fungal infection while in administrative segregation (Dkt. 13 at pp. 2–3).

1

The Court has considered Wilson's factual allegations and analyzed the applicable law. The Court will dismiss Wilson's claims pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim on which relief may be granted.

I. **BACKGROUND**

According to the TDCJ website, Wilson is currently serving a 35-year sentence for murder in the Hughes Unit in Gatesville. On October 24, 2013, while he was incarcerated in the Ramsey Unit in Rosharon, Wilson was found guilty in prison disciplinary proceeding #20140049970 of assaulting another inmate (Dkt. 11 at p. 2; Dkt. 11-2 at p. 2). He lost 255 days of good-conduct time; was demoted to the L3 custodial classification; was placed on recreational and commissary restriction for 45 days; and was transferred to administrative segregation (Dkt. 11 at p. 2). Wilson filed timely Step One and Step Two grievances, and his disciplinary conviction was overturned at the Step Two stage (Dkt. 11-2 at p. 2). Before his disciplinary conviction was vacated, Wilson spent three and a half months in administrative segregation, during which he contracted a fungal infection (Dkt. 11 at p. 4). He seeks compensatory and punitive damages for the time he spent in administrative segregation, as well as an injunction mandating that TDCJ make available educational opportunities that Wilson lost as a result of the disciplinary conviction (Dkt. 13 at pp. 4–5).

II. **THE PLRA**

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a

district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Wilson, proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Wilson proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not

3

bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. PROCEDURAL DUE PROCESS

Under the applicable legal standard, Wilson has not stated a viable claim for denial of his right to procedural due process. An inmate's rights in the prison disciplinary setting are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). A prisoner charged with institutional rules violations is only entitled to relief under the Due Process Clause when the disciplinary action resulted in a sanction that infringed upon a constitutionally protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483–87 (1995) ("[N]either the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*."). These protected liberty interests can emanate from either the Due Process Clause itself or from state law—*Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)—but the range of protected interests "has been dramatically narrowed" by the Supreme Court, particularly in its *Sandin* opinion. *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995). The cases indicate that, in order to trigger protection under the

4

Due Process Clause directly (i.e. without implicating a state-created liberty interest), state action must subject the prisoner to consequences that are "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Toney v. Owens*, 779 F.3d 330, 337 (5th Cir. 2015) (quoting *Vitek v. Jones*, 445 U.S. 480, 493 (1980)); *see also Thompson*, 490 U.S. at 460. Such consequences can include, for instance, an involuntary transfer from a state prison to a mental hospital for psychiatric treatment; the forcible administration of psychotropic drugs; and the imposition of sex-offender classification and conditions on a prisoner who has not been convicted of a sex offense. *See Vitek*, 445 U.S. at 493–94; *Washington v. Harper*, 494 U.S. 210, 221–22 (1990); *Toney*, 779 F.3d at 336–37. Similarly, state-created liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (citations omitted). A state's action can also implicate procedural due process protection when that action "will inevitably affect the duration of [the prisoner's] sentence." *Id.* at 487.

Wilson's claims do not come within the range of protected liberty interests. As mentioned above, Wilson suffered the following sanctions as a result of the disciplinary proceeding: (1) he was moved to administrative segregation; (2) he was demoted to the L3 custodial classification; (3) he was placed on recreational and commissary restriction

5

for 45 days; and (4) he lost 255 days of good-conduct time (Dkt. 11 at p. 2). To begin with, Wilson's successful Step Two appeal cured any error in the disciplinary proceeding. *Ard v. Leblanc*, 404 Fed. App'x 928, 929 (5th Cir. 2010); *see also McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983) ("The constitution demands due process, not error-free decisionmaking[.]"); *Terrell v. Bassett*, 353 F.Supp.2d 658, 661 (E.D. Va. 2005); *Hyson v. Neubert*, 820 F.Supp. 184, 190–91 (D.N.J. 1993). Regardless, none of the sanctions imposed on Wilson either constituted an "atypical and significant hardship" or inevitably affected the duration of Wilson's sentence. The sanctions, as a result, were simply not Constitutionally actionable.

### a. Administrative segregation

The placement in administrative segregation appears to be Wilson's biggest complaint, but he cannot base a Constitutional claim on it. The Fifth Circuit has firmly stated that, "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will *never* be a ground for a constitutional claim[.]" *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996) (emphasis added); *see also Allums v. Phillips*, 444 Fed. App'x 840, 841 (5th Cir. 2011) (citing several cases) ("Placement in administrative segregation or a change in custodial classification as a result of a disciplinary infraction, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest, and, therefore, there is no right to due process."). Wilson does not point to any extraordinary circumstances. He was found guilty in a prison disciplinary proceeding of assaulting another inmate; was placed

in administrative segregation; and got the guilty finding overturned in his Step Two grievance, at which point he was moved out of administrative segregation. The fact that Wilson's disciplinary case was overturned on appeal indicates that he was provided with due process, not deprived of it, notwithstanding his having to sit in administrative segregation pending the appeal. As the Eastern District of Virginia has succinctly stated, "[c]onfinement [in isolation] while awaiting administrative review which leads to the reversal of the inmate's conviction does not, in itself, violate due process." *Terrell*, 353 F.Supp.2d at 661. And, notably, the three-and-a-half-month period that Wilson spent in administrative segregation falls far short of the time periods held by federal courts to have been "atypical" enough to bring the Due Process Clause into play. *See Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014) ("[T]he duration in segregated confinement that courts have found does *not* give rise to a liberty interest ranges up to two and one-half years[.]") (emphasis added); *see also, e.g., Hernandez v. Velasquez*, 522 F.3d 556, 562–63 & n.10 (5th Cir. 2008) (citing several cases as examples and holding that "confinement [without a hearing] to a shared cell for twelve months with permission to leave only for showers, medical appointments, and family visits" because of erroneously suspected gang affiliation did not deprive the prisoner of a liberty interest protected by the Due Process Clause).

### b. Custodial demotion and recreational and commissary restrictions

The reduction in Wilson's time-earning classification may have affected Wilson's eligibility for early release from prison. But the Due Process Clause does not include a

right to conditional release before the expiration of a valid sentence, and the Texas parole statutes do not create a protected liberty interest because parole in Texas is entirely discretionary. *Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979); *Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007); *Kyle*, 65 F.3d at 32. Moreover, the Fifth Circuit has held that reductions in a prisoner's time-earning status, and the potential impact of those reductions on good-time credit earning ability, are too attenuated from the prisoner's ultimate release date to invoke the procedural guarantees of the Due Process Clause. *Malchi v. Thaler*, 211 F.3d 953, 958–59 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). The changes in the conditions of Wilson's confinement that are attendant to the reduction in his custody classification do not affect the duration or fact of Wilson's confinement and do not constitute atypical, significant hardships that go beyond the ordinary incidents of prison life. They therefore do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997); *Malchi*, 211 F.3d at 958. The same is true of the temporary limitations imposed on Wilson's privileges. *Id.*

### c. Loss of good-time credit

Wilson's loss of 255 days of good-time credit could have been more problematic than the other sanctions. As the Fifth Circuit has explained, Texas provides two general ways in which an inmate can become eligible for early release: (1) parole, which is completely discretionary; and (2) mandatory supervision, under which early release is virtually assured (parole officials retain a modicum of discretion in the matter) once an

8

inmate's time served added to his good-time credit equals the length of his sentence. *Teague*, 482 F.3d at 774–77. Texas state inmates who are eligible for release on mandatory supervision have a protected liberty interest in their previously earned good-time credit. *Id*. However, Wilson, who is serving a sentence for murder, is not eligible for release on mandatory supervision. *See* TEX. GOV'T CODE 508.149(a)(2). Because he is not eligible for release on mandatory supervision, he does not have a protected liberty interest in his good-time credit. *Madison*, 104 F.3d at 768–69.

Even if his successful Step Two grievance did not cure any procedural defects in the disciplinary proceeding, Wilson has not stated a viable procedural due process claim.

## IV. **RETALIATION**

Wilson contends that Defendant J.W. Mossbarger, who was the warden of the Ramsey Unit, used the disciplinary proceeding to retaliate against Wilson for calling Mossbarger a "piece of shit" in an I-60 form (Dkt. 11 at pp. 1–2, 5). It is unclear when Wilson wrote the I-60 to Mossbarger, but the documents provided by Wilson indicate that the incident must have taken place before October of 2012 (and thus more than a year before the disciplinary case about which Wilson is complaining in this action) (Dkt. 13-1 at pp. 9–11).

To state a claim for retaliation, an inmate must establish: (1) that he invoked a specific Constitutional right; (2) that the defendant intended to retaliate against him for his exercise of that right; (3) a particular retaliatory adverse act; and (4) that, but for the defendant's retaliatory motive, the complained-of adverse act would not have occurred.

*Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson*, 110 F.3d at 310 (quotation marks omitted). Proving retaliation entails carrying a "significant burden" and presenting more than mere conclusory allegations, and the court must "carefully scrutinize" the claim "with skepticism[.]" *Woods*, 60 F.3d at 1166. The inmate must present direct evidence of motive or, barring that, allege a chronology of events from which retaliation may be plausibly inferred. *Id.* And the prisoner's allegations of causation must show more than "temporal proximity alone[.]" *Reese v. Skinner*, 322 Fed. App'x 381, 383 (5th Cir. 2009).

Wilson has not stated a claim for retaliation. The Court will assume without deciding that, in writing an I-60 to Mossbarger in which he called Mossbarger a "piece of shit," he properly invoked a specific Constitutional right.[1] Even so, Wilson's allegations are far too conclusory to carry his burden. There is absolutely no evident connection between Wilson's profane outburst at Mossbarger and the disciplinary proceeding. Actually, Mossbarger did not even initiate the disciplinary proceeding; he only reviewed the record of the proceeding after it was complete, when Wilson filed his Step One

---

[1] A prisoner's First Amendment free-speech rights are not boundless—the prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). In order to state a claim for retaliation based on the exercise of free-speech rights, the prisoner must establish that he exercised those rights "in a manner consistent with his status as a prisoner." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004). "Prison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment." *Id.*

10

grievance (Dkt. 11 at pp. 2, 6; Dkt. 11-1 at p. 2). The disciplinary proceeding was initiated by Defendant Major Jackson and presided over by Defendant Captain Smith (Dkt. 11 at p. 2). There is no indication that Mossbarger somehow interfered with the Step Two grievance, which in any event was successful. Wilson's retaliation claim fails.

## V. **PRISONER SAFETY**

Wilson contends that, while he was housed in administrative segregation, he contracted a fungal infection after he was denied materials with which to clean his "filthy" cell (Dkt. 13 at p. 2). Under the Eighth Amendment, prisoners have a right to "humane conditions of confinement[,]" and prison officials are required to provide the prisoners with adequate food, shelter, clothing, and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quotation marks omitted). Prison officials must take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the Eighth Amendment mandates *reasonable* safety, not *absolute* safety; and prison officials are not liable when they make good-faith errors in assessing a potential danger. *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998). Not every injury suffered by a prisoner translates into Constitutional liability for prison officials responsible for the inmate's safety. *Farmer*, 511 U.S. at 834. Rather, Wilson must show that the defendants were deliberately indifferent to his safety. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

The standard for deliberate indifference is extremely high and requires more than a showing that the defendants were negligent or mistaken in their judgment. *Id.*; *Domino v.*

11

*Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 1999). To establish deliberate indifference in a prison conditions case, a prisoner must show that the prison officials: (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) actually drew an inference that such potential for harm existed. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). The deliberate-indifference standard is designed to be stringent enough to separate acts or omissions that amount to intentional choices from those that are merely unintentionally negligent oversights. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). To that end, it draws on the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40. In short, it is not enough that Wilson contracted the infection, or even (for the sake of argument) that the defendants were negligent in allowing him to contract it. In order to establish an Eighth Amendment violation, Wilson must show that the defendants knowingly exposed him to and consciously disregarded a substantial risk of serious harm. *Brewer v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

Wilson has not met the deliberate-indifference standard. He has not shown that any of the defendants knowingly exposed him to and consciously disregarded a substantial risk of serious harm, even assuming that such a risk existed. It is not even clear to whom Wilson specifically complained about the state of his cell, or what he said.

Moreover, although he alleges that he was denied the cleaning supplies he requested, he admits that he was prescribed a "medical cream" to treat the infection (Dkt. 13 at p. 4).

The Court will dismiss Wilson's complaint.

## VI. <u>CONCLUSION</u>

Based on the foregoing, the Court **ORDERS** as follows:

1. Wilson's claims are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim on which relief may be granted.

2. All pending motions are **DENIED** as moot.

The Clerk is directed to provide a copy of this order to the parties. The Clerk is also directed to provide a copy of this order to the Manager of the Three-Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

SIGNED at Galveston, Texas on _April 20_, 2017.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE